## DELIA DINSMORE v. CITY OF ST. LOUIS, Appellant.

### Division One, December 21, 1905.

1. **STREET: Inviting Public Use.**   Where there is substantial evidence that the city prior to the accident had undertaken to keep the street and sidewalk in repair and thereby had invited travel over it, a demurrer should not be sustained on the ground that the city was not responsible for a defect in the walk.

2. **NEGLIGENCE: Variance in Proof.** A plaintiff is not bound by the testimony of one of her witnesses to the effect that the accident occurred in a manner different from that charged in the petition, if there are other witnesses who testify it was caused in the way alleged.

3. ———: **Defect in Street: Knowledge: Proof.** Where the petition charges that the city had knowledge of the defect in the street, it is not necessary for plaintiff to prove that it had actual knowledge. It is the duty of the city to repair its streets, whether it has actual or presumptive knowledge of their defective condition.

4. ———: ———: ———: **Variance: Rain: Latent Defect: Testimony of One Witness.** Where one of plaintiff's witnesses testified that the wash-out in the cinder sidewalk into which plaintiff fell was caused by a rain on the night of the accident, and other witnesses testified that it had existed from two weeks to two months, the city cannot contend that the defect was latent,

of which it had no notice, and therefore a demurrer to the case should have been sustained.

5. ———: ———: **Contributory Negligence.** There was a cinder pathway four feet wide, two or more feet above the level of the street. Along the cinder sidewalk ran a ditch for carrying off the surface water, and the waters in the ditch had dug out the cinder sidewalk at one place until it was a foot and a half wide, and this condition had existed from two weeks to two months before the accident. Plaintiff had driven over the street a few times, and knew the cinder sidewalk was there, but had not passed over it for several months before the accident, and did not know of the wash-out. The night was dark and rainy, and plaintiff supposed she was in the middle of the walk, and while so walking when she reached the wash-out fell into the ditch and was injured. *Held*, that it could not be fairly or properly held that she was guilty of contributory negligence.

Appeal from St. Charles Circuit Court.—*Hon. E. M. Hughes*, Judge.

AFFIRMED.

*Charles W. Bates* and *Benjamin H. Charles* for appellant.

(1) The city has the right to determine, in the first instance, whether a street or sidewalk shall be made at all, and if so, when and in what manner, and to what extent and width. It need not improve the entire width; and it may conclude that a sidewalk in a particular locality is not necessary. And of the necessity or expediency of exercising such power only the municipal assembly, not a court or jury, is to judge. Heckler v. St. Louis, 13 Mo. App. 279; Young v. Kansas City, 27 Mo. App. 114; Moore v. Cape Girardeau, 103 Mo. 476; Keating v. Kansas City, 84 Mo. 418; McCormack v. Patchin, 53 Mo. 36; Moran v. Lindell, 52 Mo. 233; Kossman v. St. Louis, 153 Mo. 299; Craig v. Sedalia, 63 Mo. 419; Bassett v. St. Joseph, 53 Mo. 303; Ely v. St. Louis, 181 Mo. 723; Ruppenthal v. St. Louis, 190 Mo. 213. And it follows, that for an injury not connected with some affirmative act by the city, no action is

maintainable against the municipality. Heckler v. St. Louis, 13 Mo. App. 279; Carle v. DeSoto, 156 Mo. 443; Hunter v. Weston, 111 Mo. 184; Moore v. Cape Girardeau, 103 Mo. 476; Downend v. Kansas City, 71 Mo. App. 529; Brown v. Glasgow, 57 Mo. 156; Ely v. St. Louis, 181 Mo. 723; Ruppenthal v. St. Louis, 190 Mo. 213. (a) Plaintiff's instruction 1 is therefore defective, because it assumes that the city had opened the whole street to public use; and that because the public had made use of a pathway along the side of the street, the city was liable for defects therein. Ruppenthal v. St. Louis, supra; Ely v. St. Louis, supra. (b) It also assumed that there was evidence before the jury from which it might be inferred that the city had been "maintaining a cinder walk" on the west side of Arlington avenue. There is no evidence in support of that proposition. (2) The city could have had neither actual nor constructive notice of the condition which existed at the time of the accident, for the reason that the cause of the accident was the rain of that same night, the wet and slippery ground, and the resulting cave-in under plaintiff's weight. Carvin v. St. Louis, 151 Mo. 334. (3) The cause of the accident was not pleaded. The petition alleges that the plaintiff was lawfully walking on a sidewalk and that she fell therefrom into an unguarded hole in the street alongside the sidewalk. The evidence is to the effect that on account of the rain, the soft and slippery condition of the earth, and the washout, one-half of the pathway on which plaintiff was walking caved in beneath her. Plaintiff cannot recover on a case different from that alleged in her petition. Waldhier v. Railroad, 71 Mo. 514; Atchison v. Railroad, 80 Mo. 213; Raming v. Railroad, 157 Mo. 506; Fuchs v. St. Louis, 167 Mo. 620; Hesselbach v. St. Louis, 179 Mo. 505. (4) Plaintiff was not in the exercise of ordinary care. (a) She was familiar with the locality. (b) She knew of the existence of the gul-

ly. (c) And she saw it at the time of the accident. Wheat v. St. Louis, 179 Mo. 572; Kaiser v. St. Louis, 185 Mo. 366; Ruppenthal v. St. Louis, 190 Mo. 213.

*A. R. Taylor* for respondent.

(1) There is substantial evidence in this case that the city of St. Louis had taken charge of the sidewalk in question; had repaired it; had taken up a part of the plank sidewalk and replaced it with the cinder walk in question. (2) The allegation that the city knew of the defective condition of the street included the allegation that by the exercise of ordinary care it would have so known. It is not necessary to prove all of the allegations. It is only necessary to prove sufficient to entitle plaintiff to recover. Morrow v. Furber, 97 Mo. 161; Campbell v. Railroad, 121 Mo. 348; Hurlpence v. Rogers, 143 Mo. 632. Again, if the evidence offered to prove a state of facts from which knowledge would be inferred had been a variance (as it was not), appellant was bound by the statute to object to it and file an affidavit of surprise, or it was waived. R. S. 1899, sec. 655; Meyers v. Chambers, 68 Mo. 626; Fischer v. Mox, 49 Mo. 404; Bank v. Leyser, 116 Mo. 68; Bank v. Baker, 119 Mo. 406. (3) This hole was alongside the cinder walk, and the allegations of the petition conformed to the proof literally.

MARSHALL, J.—This is an action for ten thousand dollars damages for personal injuries received by the plaintiff at about two o'clock at night, on a date not stated in the pleadings, in November, 1900, on Arlington avenue, about four hundred feet north of St. Louis avenue, and close to where Harlem creek crosses Arlington avenue.

The case was taken on change of venue to St. Charles county.

The plaintiff recovered a verdict for one thousand dollars, and the defendant appealed.

THE ISSUES.

The petition alleges, ''That on the ———— night of
November, 1900, the plaintiff was lawfully passing
southeast on said Arlington avenue and the said side-
walk thereof, about a half block north of the intersection
of Arlington and St. Louis avenues in the city of St.
Louis, when she fell into an open and unguarded hole
or depression existing in said street alongside the side-
walk, a way upon which the plaintiff was walking,''
and was injured; ''that said hole or depression in
said street was well known to the defendant and its
officers and agents in charge of keeping said street in
repair, and defendant and its servants, by the exercise
of ordinary care, could and would have repaired said
street before plaintiff's said injury, yet neglected to do
so, and thereby directly contributed to cause plaintiff's
said injuries.''

The answer is a general denial, coupled with a
plea of contributory negligence.

The reply is a general denial.

The case made is this:

The plaintiff was a widow, thirty-eight years old,
living in Wellston, just outside the city limits, and
about a mile from the place of the accident; she had
known Arlington avenue for about seven years; she
was engaged in the huckster business and frequently
drove over Arlington avenue vending her wares. At
least twice before the accident she had walked over Arl-
ington avenue at the point where the accident occurred.
Arlington avenue runs north-and-south, and is about
a mile north of Easton avenue, and about a mile inside
the western city limits. It was a dirt street. The grade
had never been established by the city. Along the
west side of the street there was a cinder pathway, on
an elevation of about two to two and one-half feet above
the level of the street. Formerly the property-owners
on the street had put down a plank walk, but that get-
ting out of repair, a cinder path had been put in be-

tween the spaces in the plank walk that had become out of repair. This path was about four feet wide. On the side of the path and between the path and the roadway there was a ditch or ravine, which had been washed out by the water flowing into Harlem creek.

The plaintiff's testimony tends to show that the accident occurred a short distance south of the bridge on Arlington avenue that crossed Harlem creek; that someone had filled up the ditch or ravine with loose earth, but that the water and rain had washed it, so that at the time of the accident the cinder path at the place of the accident was only about one foot and a half wide, and on the side thereof the ravine was about nine feet deep, the cinder path having been washed away to that extent, according to the evidence of the plaintiff, about two months before the accident occurred. The plaintiff had not walked over that portion of the sidewalk at any time since the beginning of the summer before the accident. On the night of the accident plaintiff had attended the wedding of her brother, which took place at a house a short distance north of the place of the accident. About two o'clock in the morning she started home with her two sons and her little girl, about two years old, and her infant, eleven months old, the latter of which she carried. The night was dark and rainy, and the pathway slippery. She walked southward on the west side of Arlington avenue until she crossed the bridge over Harlem creek, and then she took to the cinder path. There was a light in a house on the opposite side of the street, north of the creek, which showed her the cinder path after she crossed the bridge; but, she says, when she proceeded further along it grew darker and darker so that she could not see where the path was. She supposed she was walking in the middle of the path, with her children following her, in single file. When she reached that portion of the path which had been reduced in width by the operation of the water, which was only a

foot and a half wide, she fell into the ditch and sustained, among other things, a fracture of the right leg. The evidence for the plaintiff further tends to show, that the people usually walked in the middle of the street at this point, but that when the street was muddy, as it was on this occasion, they walked on the cinder path. The evidence for the plaintiff further tends to show, that the cinder path was made originally in 1898. Touching the question of whether or not the city had thrown the street open to public travel and invited the people to use the street and the pathway, the plaintiff's evidence was as follows: In addition to what the plaintiff, herself, testified to, as above indicated, Michael Tenant testified that he had been in the service of the city, and that he and another man had put cinders on the path on Arlington avenue under the directions of the assistant street superintendent for the Fourth district; that the cinders were placed so as to fill out the gaps in the plank sidewalk; that he could not tell exactly when that work was done, nor could he locate exactly the point on Arlington avenue where he had worked, nor yet could he state how far he had placed the cinders on the walk from the bridge over the creek.

Mrs. Annie Churchill testified that she lived nine years on Arlington avenue before the accident; that the cinder sidewalk extended from the bridge ''to near the top of the hill and within about a half block of St. Louis avenue;'' that the cinders were so placed two or three years, or maybe more, before the accident; that the walk was three or four feet wide; that at the place where the cinders had been washed away the walk was less than a yard wide; that the washout had existed for about two or three weeks, any way, before the accident.

Maggie Crossman testified that she lived on Arlington and St. Louis avenues, and was acquainted with the cinder walk north of St. Louis avenue; that she had seen repairing done on it once by tearing up the boards and putting down the cinders for a distance of a few

hundred feet; that the cinder walk was three or four feet wide; that on the first of November, 1890, it was wide in some places and "right up near this post the dirt all gave way; it was narrow; it was only about a foot wide, and that the place where the dirt had been cut away was about eight or nine feet deep, and that the incline was steep; that it was in this condition for a few months; I don't remember how long before that;" that between Harlem creek and St. Louis avenue there was but one house, and about at that house was where the pathway was narrow by reason of its having been washed away, as before said; that she seen grading done but did not know who did it.

Edward Cary, plaintiff's brother, testified that he had known Arlington avenue and the condition of the street and cinder path sometime before the first of November, 1900; that for two or three years before the accident the cinder walk was used as a sidewalk; that in some places it was three and a half feet wide, but where plaintiff fell it was about three feet in width; that he assisted his sister out of the hole at about half past one or two o'clock in the morning; that it had been raining all night; "that the ground broke from under her feet, leaving about a foot and a half of the walk remaining; that he had noticed this condition a night or two before." "That the ground gave way under her feet, and that he had seen pieces of the ground—clods—broken off where she fell;" that at the place of the accident the sidewalk was about a half a foot above the street level—the ditch about nine feet lower than the sidewalk, the ditch being made by the water flowing into the creek.

Edward Dinsmore, a son of the plaintiff, fifteen years old at the time of the accident, was walking behind his mother. He testified that he had known the cinder walk about two years before the accident, and that it was from three to four feet in width and from a foot to a foot and a half above the surface of the road-

way; that he had been over the walk about a dozen times before the accident; that after leaving the wedding his mother proceeded about a quarter of a block from that house, he walking behind her; that he had not observed her falling; that it was quite dark, but she told him that she fell and he asked her where she was and he found that she was in the ditch about two feet from the top of the ground; that she handed the baby to him and was then assisted out of the ditch; that where she fell the walk was between a foot and a foot and a half wide; that he had passed that place and had observed the washout in the cinder path at that point before the day of the accident, but had not paid much attention to it.

Isaac Churchill testified that he lived across the street from where the wedding took place, in the second house north of the bridge, on the west side; that there was a cinder path from that house to St. Louis avenue; that before the cinders were put down there was a board walk put there by the people, and "that the city sent men there and took up a great many of the boards and had a culvert or wood trough put in and some cinders;" that the walk was about two and a half feet higher than the street; that the street was graded about seventy-five feet north of Mr. Russell's house down to the creek; that there they put in a new bridge and put it higher than the other bridge was, and graded the roadway up to the level, and put boards so the people could walk from the bridge; that this was about five years before the trial; that the cinder walk had been put down about seven years before the trial; that the ditch was about four feet wide, and the water had washed it out; that the walk was about two feet in width at the middle of the hole; that he did not think the walk was over two feet wide at that point, the remaining part having been washed into the creek; that it had been in this condition about two months before November 1, 1900, that the street had once been graded and

made by the parties that owned the property abutting
it, the owners having cut the street through and made it
to suit themselves; that it then "got bad and the city
repaired it;" that the city first graded the street or
roadway; that the ravine had been washed out by the
water; that at the time the city graded the roadway the
grading operations filled the ravine along the sides;
that it afterwards washed out again to a depth of nine
feet at this particular place; that the rain kept washing
it out all the time; "that whenever it rains and the
water gets high it washes it and the dirt comes out; it
undermines and when you walk on it it goes down."

The testimony on the part of the defendant tended
to prove that the city had never established the grade
for either the roadway or sidewalks on Arlington
avenue; had never improved the street in any way;
had never made or repaired the sidewalks in any way;
had never authorized or paid for the laying or placing
of cinders on the sidewalk, and no appropriation for so
doing had ever been made by the city; that before any
street is ever graded or improved by the city the grade
is established by ordinance; that whatever grading or
filling had been done on the street and whatever work
had been done on the sidewalk had been done either by
the railroad company dumping dirt at that point, which
had been taken from St. Louis avenue when it was lay-
ing its tracks, or by the owners of the abutting prop-
erty.

At the close of the plaintiff's case and again at the
close of the whole case the defendant demurred to the
evidence, the court overruled the demurrers, and the de-
fendant excepted.

The instructions given for the plaintiff and here
complained of will be noted in the course of the opinion.

## I.

The first contention of the defendant is that the
trial court erred in not sustaining the demurrers to the
evidence.

The defendant contends that this case falls precisely within the rule laid down in Ely v. St. Louis, 181 Mo. 723, and Ruppenthal v. St. Louis, 190 Mo. 213. And further, that it also falls within the rule laid down in Carvin v. St. Louis, 151 Mo. 334.

In the Ely and Ruppenthal cases there was no evidence tending to show that the city had ever impliedly invited pedestrians to use the sidewalk, in both of which cases the sidewalk was in a state of nature. It cannot be fairly said that there is no substantial evidence in this case tending to show that the city had undertaken to keep the sidewalk on Arlington avenue in repair and in reasonably safe condition for travel. It is true that Tenant, the employee of the street department who repaired the sidewalk on Arlington avenue by the direction of the assistant street commissioner for the Fourth district, was unable to state when he did so or at what particular point he did so; but Mrs. Churchill testified that she saw cinders placed on the sidewalk "from the bridge to near the top of the hill" two or three years or more before the accident. Maggie Crossman testified that she had seen repairing done by tearing up the boards and putting down cinders for a few hundred feet. Isaac Churchill testified that at one time the property-owners graded the street to suit themselves but that when it got out of repair the city repaired it, put in a new bridge over the creek and constructed a board walk from the bridge to the cinder path about five years before the trial; that the city "had first graded the street or roadway," and that the water washed out the ravine on the side where it had been filled by the grading operation.

This constituted substantial evidence that the city had, prior to the accident, undertaken to keep the street and sidewalk in repair and thereby had invited travel over the same, and was sufficient to take the case to the jury.

## II.

The defendant next contends that there was a total failure of proof on the part of the plaintiff to establish the cause of action stated in the petition, and therefore the verdict cannot stand.

This contention is based upon the postulates that the petition charges that the plaintiff fell into an open and unguarded hole or depression in the street alongside the sidewalk, whereas the testimony showed that the plaintiff knew of the existence of the hole, ditch or ravine alongside of the sidewalk and that she did not fall into that ravine, but that the earth was soft and when she was walking along the cinder path, about one-half of the pathway gave way beneath her weight and she was precipitated into the ditch. The plaintiff's brother did give that account of the accident and did say the earth gave way beneath her, causing the accident. But the other witnesses for the plaintiff, Mrs. Churchill, Maggie Crossman, Edward Cary, Edward Dinsmore and Isaac Churchill, all said the hole in the sidewalk had been caused by the washing away of about one-half thereof, and had existed from two weeks to more than two months before the accident. If the testimony of these witnesses was true, and if the plaintiff's testimony that while walking along the cinder walk she fell into the hole thus made therein was true, the plaintiff made a prima facie case, and such proof tended to support the allegations of the petition. The plaintiff was not conclusively bound by the account given by her brother of the cause of the accident, and unless she is bound by the account of one witness only, this contention of the defendant cannot be maintained, for it is based solely upon the theory that the accident occurred in the manner stated by her brother, and ignores entirely the statements of the other witnesses as to the cause of the accident.

## III.

The next contention of the defendant is, that the petition charges knowledge by the city of the condition of the street prior to the accident and that it could have repaired the sidewalk before the accident occurred; whereas, the testimony fails to show actual knowledge, and at most only shows constructive notice, and therefore there was a total failure to prove the allegations of the petition. The petition charges "that said hole or depression in said street was well known to defendant and its officers and agents in charge of keeping said street in repair," etc. As far as the obligation of the city to repair defects in a street is concerned, it is not material whether the city has actual knowledge or only presumptive knowledge. The petition does not state the character of the knowledge of the city, whether it was actual or constructive; and under our liberal system of code pleading it cannot be held that to charge knowledge compels the party charging it to prove actual and not merely constructive knowledge. There is no merit in this contention.

## IV.

The defendant next contends that this case falls within the principle of Carvin v. St. Louis, 151 Mo. 334, in that, the condition had not existed for a sufficient length of time prior to the accident to charge the defendant with notice, but that the accident was caused by a latent defect in the sidewalk which caused it to give way under the plaintiff's weight—the latent defect being the softening of the earth underneath the cinders by reason of the rain that had been falling that day.

As hereinbefore pointed out, there was substantial evidence on the part of the plaintiff that the washout into which the plaintiff fell had existed from two weeks to more than two months before the accident. This contention of the plaintiff is likewise based solely up-

on the testimony of her brother, and this feature of the case has already been necessarily disposed of by what has been hereinbefore said.

## V.

The first instruction given for the plaintiff is complained of, on the ground that it permitted the jury to find for the plaintiff if the city had either actual or constructive notice of the dangerous condition of the sidewalk. This objection is disposed of in what is hereinbefore said in reference to the total failure of proof under the allegations of the petition and as to the character of knowledge of the city.

## VI.

Lastly, it is contended that the plaintiff was guilty of contributory negligence.

It is argued that the plaintiff was familiar with the locality, knew of the existence of the ditch or ravine, and saw its condition at the time of the accident, and, therefore, this case falls within the principles laid down by this court in Wheat v. St. Louis, 179 Mo. 572; Kaiser v. St. Louis, 185 Mo. 366; and Ruppenthal v. St. Louis, 190 Mo. 213.

The accident occurred on the night of the first of November, 1900. Prior to that time the plaintiff had passed along Arlington avenue in her business of selling vegetables and knew, in a general way, of the condition of the street and of the ravine on the side thereof. At least twice before the accident she had walked on the cinder path at the point where the accident occurred, but she testified, and there was no countervailing evidence, that she had not passed over the sidewalk at that point since the beginning of the summer before the accident occurred. The evidence shows that the condition in the cinder path which caused the accident had existed from two weeks to two months prior to the accident. Hence, there is no evidence tending to prove that she knew of the washout in the sidewalk prior to

the accident.  Neither was there any substantial evidence that she could see the washout in the sidewalk before she fell into it.  It is true she says there was a light in the second house north of the bridge which enabled her to see how to get up from the bridge on to the cinder path, but she also said that as she proceeded on her way the light became dimmer and finally became exhausted so that she could not see the sidewalk at all; that the night was dark and rainy, and that she supposed she was walking in the center of the sidewalk, and could not see the washout therein.

This case, therefore, does not fall within the principles laid down in the cases cited, nor within the principles announced in other cases where the right to recover was denied because the injured party knew of the defective condition of the street and did not exercise ordinary care while passing along the same.  It could not be fairly or properly held that the plaintiff was guilty of contributory negligence in attempting to pass over the sidewalk in question under the circumstances.  She had no notice or knowledge of the defect  in the sidewalk.  As far as her knowledge or notice extended there was a cinder pathway three or four feet wide over which she could have safely walked.  There was therefore no element of contributory negligence on her part in attempting to walk along that cinder path at the time of the accident.

These considerations necessarily impel the conclusion that the judgment is for the right party, and it is, therefore, affirmed.

All concur, except *Brace, P. J.,* absent.