LAURA JACKSON, Respondent, v. CITY OF SE-
DALIA, Appellant.

Kansas City Court of Appeals, May 22, 1916.

1. **DAMAGES: Municipal Corporations: Acceptance of Streets: Invitation to Use.** A city, in merely accepting a street or by declaring that it is such, or in deciding to what extent the street shall be given to the public for use, acts in its governmental capacity, and cannot be held liable for any neglect of the street until after the city has acted in its ministerial capacity by inviting the public to use the same.

Jackson v. City of Sedalia.

2. ——: ——: ——: ——: **Extent of Invitation.** It is a governmental matter for a city to say to what extent it will offer a street to the public for use; and if an individual attempts to use a portion which the city has neither expressly nor impliedly invited him to use, and he is injured thereon, he cannot look to the city for damages.

3. ——: ——: ——: ——: ——: **Liability for Defect.** It is not the improvement of the street that fixes liability for neglect of a defect therein. It is the invitation, on the part of the city, to the public to use that portion of the street where the defect is and the traveller is injured, that renders the city liable for neglecting to keep such portion in a reasonably safe condition for travel. Improvement by the city is evidence that the portion so improved has been given to the public to be used, but the city's invitation can be shown in other ways.

4. ——: ——: ——: ——: ——: ——: When it is shown that the city has opened for public travel a street that is level and smooth, fit for travel from property line to property line without anything being done to it, the invitation is that every part thereof may be used. And when an eight-foot strip on the side, suitable for travel, has been left for people to walk upon as a sidewalk and a crossing leads to the strip and the strip has been used by the public for a sidewalk, and after these conditions had become established a row of stakes was driven in said strip rendering the walk dangerous and unsafe, over which plaintiff fell and was injured while exercising ordinary care, the city is liable notwithstanding the fact that no sidewalk of brick, wood or stone was constructed there.

5. ——: ——: ——: ——: ——: **Sidewalk.** A sidewalk, as its name indicates, is nothing more than a side walk, that is, a path or way for the use of foot passengers at the side of a street. Usually it is paved and this is so often the case that in using the term "sidewalk" the construction is thought of as constituting the sidewalk. But it is not the constructing of a paved pathway that renders the city liable for a failure to keep it reasonable safe; it is the invitation on the part of the city to the public to use the way for a walk. And that invitation may be extended, as in this case, in other ways than by having a paved walk constructed thereon.

6. ——: ——: ——: ——: ——: **Contributory Negligence.** Evidence examined and a pedestrian exonerated from contributory negligence as a matter of law.

Appeal from Pettis Circuit Court.—*Hon. H. B. Shain,* Judge. .

Jackson v. City of Sedalia.

AFFIRMED.

*Hall Robertson & O'Bannon* for appellant.

*A. L. Shortridge* and *W. D. Steele* for respondent.

TRIMBLE, J.—This is an action for damages arising from a fall by plaintiff while walking on a public street in the city of Sedalia. She recovered judgment for $1000 and defendant has appealed.

The facts are as follows: Engineer street, in said city, runs north and south and is intersected at right angles by Eighteenth street running east and west. Nineteenth street is parallel to and the next street south of Eighteenth. Plaintiff lived on Nineteenth street one house east of Engineer street. For many years Engineer has been one of the traveled streets of the city. About four years prior to the plaintiff's fall the city had graded this street from curb line to curb line. The street was level and smooth from property line to property line, and the grading consisted merely of taking out the dirt to a depth of eight or ten inches at the curb line on each side and making a well defined roadway between the two curb lines and leaving a space on each side of the roadway about eight feet wide. This space was between the property line and what is ordinarily the curb, and in other streets is the space that is occupied by the sidewalk and parking adjacent thereto.

Along the south side of Eighteenth street from the west side of Engineer is a concrete sidewalk which extends west to the principal part of the city and the nearest car line. From the east end of this sidewalk at the southwest corner of Eighteenth and Engineer streets, a crossing extends west across Engineer street to the southeast corner of Eighteenth and Engineer.

Some three years prior to plaintiff's fall, Mr. Hocker, who then was and ever since has been an alderman of the city, drove a number of stakes in a row, commencing at a point about twenty feet south of the crossing at the southeast corner of Eighteenth and Engineer streets and running south for several feet. There was a woven wire fence on the property line on the east side of Engineer street, and this row of stakes was seven feet west of the fence. They were perhaps a few inches, perhaps a foot east of the edge of the graded part and, therefore, between the property line and the curb line and within the space left on the east side of the street for the sidewalk. From the southeast corner of Eighteenth and Engineer streets there is no sidewalk running east along Eighteenth street, nor has any sidewalk been constructed along the east side of Engineer street. But for many years the public, and especially the people living south and east of the last above mentioned corner, have traveled upon this eight foot space on the east side of Engineer street as a sidewalk in going from Eighteenth to Nineteenth and *vice versa.* For several years the city has maintained a street sign with the number on it on the east side of Engineer street at Eighteenth. This eight foot space, thus used as a sidewalk, was level and smooth and required nothing to be done to it to put it in condition for pedestrians to walk upon it as a sidewalk, though, as has been stated, no walk was ever *built* there, the people merely using the smooth ground as a sidewalk.

On the night of November 15, 1914, which was very dark, plaintiff was returning home from a neighbor's. She came east along the south side of Eighteenth street and, reaching Engineer street, continued east across that street on the crossing till she came to the southeast corner of Eighteenth and Engineer. Here she turned south on the space used

as a sidewalk and attempted to proceed in the middle of the walk to Nineteenth street. In doing so she unwittingly veered slightly from a due south course and stumbled over one of the stakes above mentioned and fell upon some of the others, they striking her in the groin and abdomen and injuring her severely. These stakes were about six inches high and perhaps two inches square.

It is the contention of the defendant that its demurrer to the evidence should have been sustained. This contention proceeds upon the idea that inasmuch as there was no *constructed* sidewalk, made of wood, stone, brick or other materials *built* on this eight foot space, the city could not be deemed to have undertaken the duty of keeping it in reasonably safe repair, and, therefore, could not be held liable. In support of this contention defendant cites Ely v. St. Louis, 181 Mo. 723; Ruppenthal v. St. Louis, 190 Mo. 213; Curran v. St. Joseph, 143 Mo. App. 618.

The doctrine of these cases is well established and no one would attempt to controvert or question them. It is quite true that a city, in merely accepting a street or by declaring that it is such, or in deciding to what extent the street shall be given to the public for use, acts in its governmental or legislative capacity, and cannot be held liable for any neglect of duty until after the city has acted in its ministerial capacity by giving the street to the public *for use* and inviting the public to travel the same. And since it is a governmental matter for the city to say *to what extent* it will offer a street to the public for use, if an individual attempts to use a portion which the city has neither expressly nor impliedly invited him to use, and he is injured thereon, he cannot look to the city for damages.

But it must always be remembered that it is not the *improvement* of the street that fixes liability for neglect of duty. It is the *invitation* on the part

of.the city *to use* that portion of the street on which the traveler is injured that renders the city liable for neglecting to keep such portion in a reasonably safe condition for travel. Of course, the fact that the city has improved, or has sought to repair, the portion of the street where the injury occurred is evidence that such portion has been given and opened to the public for use, but if that can be shown by other facts, it will be sufficient.

In this case the street was level and smooth, fit for travel from property line to property line without anything being done to it. When it is shown that such a street has been opened to the public for use, the invitation is that every part thereof *suitable for travel* may be used. When the roadway between the curb lines was graded and properly shaped up leaving an eight foot space on the east side of the street for a sidewalk, and *in good condition for use as such* without anything further to be done to it in order to make it suitable for travel, there is nothing to indicate to the traveling public that the invitation to use the street is limited to the roadway portion. Nor indeed was the invitation limited thereto in this case, for a crossing led from the southeast corner of Eighteenth and Engineer streets west across the latter to the north end of the sidewalk space in question. And as no actually constructed sidewalk led on from the termination of this crossing, it was in itself an invitation to the public to use the strip running south along the east side of Engineer street as a sidewalk. The city engineer admitted on cross-examination that there was a walk there and that the strip was *"left there for people to walk on"* but said there was no granitoid or other *paved* walk there. For several years the public had accepted the invitation, thus extended, and had used the strip as a sidewalk, and *after* these conditions had become established, a row of stakes was driven in the space

thus left for and used as a sidewalk, and these stakes rendered it dangerous and unsafe. A sidewalk, as its name indicates, is nothing more than a *side walk,* that is, a path or way for the use of foot passengers at the side of a street. Usually it is paved and this is so often the case that in using the term "sidewalk" we think of the *construction* as constituting the sidewalk. But, as stated before, it is not the constructing of a paved pathway that renders the city liable for a failure to keep it reasonably safe, it is the invitation on the part of the city to the public to use the way for a walk. And that invitation may be extended, as in this case, by other ways than by having a paved walk constructed thereon. This is not a case where a portion of a street is left in a state of nature so unfitted for use as a walk that the city cannot be said to have invited the public to use it. The conceded facts show that the strip was left *for people to walk on;* that it was fit and suitable for that purpose; that a crossing led directly to it and nowhere else since there was no built walk from there on in any other direction. And the injury was caused, not by some natural and inherent defect in the strip, but from something placed there after the invitation to use the walk has been extended and accepted. "A city like the humble village or country town may leave its streets as dirt roads, and yet be liable for defects negligently allowed to exist in them." [Benton v. St. Louis, 217 Mo. 687, l. c. 701.] As said in Brennan v. City of St. Louis, 92 Mo. 482, l. c. 487, "while it must be conceded that much discretion lies with the city government, as to how and of what material the streets and sidewalks shall be made, yet, when a street is thrown open to the public use, as this one was, it is the duty of the city to keep the same in a condition reasonably safe for persons traveling thereon, with ordinary care and prudence." To the extent that the city sanctions the use of a street by the public

as a thoroughfare can the city be justly held liable for lack of ordinary care to maintain the thoroughfare in a reasonably safe condition for such use. [Baldwin v. City of Springfield, 141 Mo. 205, l. c. 212.] And in the case at bar, the conceded facts show that the city's invitation to use the street was not limited merely to the roadway but extended also to the space left as a sidewalk for the people to travel on. It not only formed a suitable sidewalk for pedestrians but there was no other place so suitable for them to travel as here and a crossing led directly to it so that it might be used. The proof that the city has invited the public to use a thoroughfare is not confined to the ordering of a constructed walk thereon. It may be shown in other ways. [Meiners v. City of St. Louis, 130 Mo. 274, l. c. 284.]

The charge that plaintiff can be held guilty of contributory negligence as a matter of law is untenable. She knew the stakes were in the ground but walked east on the crossing to the corner and then turned south on the sidewalk space, as she says "going along just as cautious and careful as I could." In going to the corner she went to where she would get upon the walk and if she had kept on due south walking on the middle or east portion of the seven foot strip she would have missed the stakes, but in the darkness, she veered a few feet to one side and fell over the pegs. The question whether she was exercising ordinary care or not was one for the jury. While her knowledge of the stakes was important as bearing on the question of her negligence, yet it does not result in declaring absolutely as a necessary conclusion of law that she was negligent. [Graney v. St. Louis, 141 Mo. 180, l. c. 185; Maus v. City of Springfield, 101 Mo. 613, l. c. 618; Beauvais v. City of St. Louis, 169 Mo. 500.]

The fact that the pegs were located near the west edge of the strip of ground left as a sidewalk

can have no conclusive bearing upon the matter. Defendant seems to argue that as the stakes were west of and outside the line of ordinary travel the city is not liable. The evidence is the entire strip had been left for people to walk upon; there was no designation of any portion thereof for sidewalk exclusively and the rest for parking between the walk and curb, unless it be by the marks made thereon in the line of ordinary travel. Defendant contends that plaintiff must have known she was near the outside portion of the strip from the difference in the grass and herbage under her feet. But she says she could not tell any difference by that. Besides, Mr. Hocker, a witness for defendant, says he kept the grass mowed with a lawn mower. The photographs offered in evidence do not show such a difference conclusively, because they were taken in May when the herbage was growing and the accident happened in November when the herbage, if any, was dry and dead.

Even if the stakes were too far west to be in the space where the walk could be said to be, or where a constructed sidewalk would have been, still this does not convict plaintiff of contributory negligence as a matter of law or exculpate the city from liability. There was nothing to differentiate the parking from the walk proper in this case, and even in cases where there was a differentiation, the city has been held liable for an obstruction on the parking. [Fockler v. Kansas City, 94 Mo. 464. See, also, Bassett v. St. Joseph, 53 Mo. 290; Fairgrieve v. City of Moberly, 39 Mo. App. 37; Coffey v. Carthage, 186 Mo. 573; Kossman v. St. Louis, 153 Mo. 293, 299; Wiggins v. St. Louis, 135 Mo. 559, 566; Hutchinson v. Mullins, 189 Mo. 438, l. c. 452.]

Plaintiff's instruction No. 1 does not assume that the city had thrown the portion of the street in controversy open to public use. On the contrary, it submits the question whether the strip in ques-

tion "had been left as a sidewalk" for the use of the public and had been used as such for a long space of time prior to plaintiff's fall. But in this case, the evidence on both sides agrees upon the facts which show that the public had been invited to use the strip as a sidewalk. When these facts appear undisputed and from the evidence on both sides, the question of invitation to the public is no longer a contested issue in the case. The case is wholly unlike Ruppenthal v. St. Louis, 190 Mo. 213. There the accident occurred on a portion of the street which the city had never thrown "open to public travel or invited the public to use." [p. 220.] The unimproved portion where the accident happened was "ruff, full of holes, grown up with weeds and in no sense an improved street or sidewalk." It was much lower than the improved roadway of the street; and on page 228 the court say the case is wholly unlike those cases "where the full width of the street had been thrown open to pubilc use." In the case at bar, the entire width of the street was fit for public use when in a state of nature. It needed no artificial preparation to make it suitable for travel and had it not been for the stakes, driven to keep the city's gutter and drain from caving or washing, no injury would have befallen plaintiff. And the conceded facts show that the public was invited to use the space on the side as a sidewalk. Defendant's instructions on this point, the refusal of which is complained of, are so drawn as to make the question of the city's invitation to use the strip as a sidewalk depend entirely on whether or not it had manifested that invitation by placing or maintaining a *prepared* or *constructed* walk thereon, and in effect telling the jury the invitation could be extended in no other way.

The defendant asked seventeen instructions of which the court refused seven. We think they were

properly refused. Some of them were incorrect and were refused because of their own vice. Still others were without evidentiary facts upon which to base them or were in conflict with the conceded facts or else were more properly covered by other instructions given in the case. This is especially true of defendant's refused instruction No. 9, as the proper elements thereof were contained in instructions 11, 12, and 13.

As the case was tried without prejudical error, the judgment is affirmed. All concur.