Meiners v. City of St. Louis.

MEINERS v. THE CITY OF ST. LOUIS, *Appellant*.

Division One, November 7, 1895.

1. **City**: PUBLIC STREET: DEDICATION: PRESCRIPTION: ACCEPTANCE. A way in a street may become a public street or highway by a dedication on the part of the owner in the manner prescribed by the statute or by prescription, and it is not necessary in such case to make any proof of acceptance.

2. ———: ———: COMMON LAW DEDICATION: ACCEPTANCE. Such way may also become a public one and the city charged with the duty pertaining thereto by a common law dedication, *i. e.*, by deed or acts *in pais* of the owner; but in such case there must be proof of acceptance by the municipality.

3. ———: ———: ———: ———. No formal acceptance by the city officers is, however, necessary, it being sufficiently indicated in many cases by showing that the way as dedicated was thereafter opened, accepted and continuously used by the public as a common thoroughfare.

4. ———: ———: DEDICATION: ACCEPTANCE. A well known and much traveled thoroughfare used as a public street for many years in a part of the city compactly built up, relative to which an ordinance was passed fixing its grade and extending it over other lands, is a public street so as to make the city liable for failure to keep it in a reasonably safe condition without proof of dedication.

5. **Practice**: INSTRUCTIONS. It is proper to refuse instructions requested on matters which are fully covered by other instructions given.

6. ———: ———: NEGLIGENCE. It is proper to refuse, in an action for personal injuries, an instruction that if plaintiff's injuries were caused by accident, mischance or misadventure, and without the negligence of either plaintiff or defendant, there could be no recovery, as it is too abstract.

7. City: STREETS: GRADE: TRAVELER.  The liability of a city for injuries received by a traveler on its street does not depend on whether it has changed the natural grade of said street so as to make it conform to the grade established by its ordinance.

*Appeal from St. Louis City Circuit Court.*—HON. D. D. FISHER, Judge.

AFFIRMED.

*W. C. Marshall* for appellant.

(1)  There is no evidence in this case to support the verdict and judgment.  Mere user alone or mere dedication unaccompanied by an acceptance by the proper authorities, or some act done by such authorities from which acceptance may be implied, does not make the land a public highway, unless the user is continuous for the full statutory period; user alone for a less period is not sufficient to charge the public with the duty to repair.  *Jennings v. Tisbury,* 5 Gray, 73; *Rowell v. Montville,* 4 Me. 272; *State v. Wilson,* 42 Me. 9; *Commonwealth v. Lowe,* 3 Pick. 408; *Remington v. Millard,* 1 R. I. 93; *Kennedy v. Cumberland,* 65 Md. 514; *Commonwealth v. Morehead,* 118 Pa. St. 344; *Getchell v. Benedict,* 57 Iowa, 121; *Brakken v. Railroad,* 29 Minn. 41; *Moss v. Zeise,* 34 Minn. 35.  (2) The circuit court erred in refusing proper instructions asked by defendant and in giving erroneous instructions for plaintiff.  *Bauman v. Boeckeler,* 119 Mo. 200.  (3) The verdict is excessive.

*Seneca N. Taylor* and *Charles Erd* for respondent.

(1)  To establish the character of the locality, where the injury occurred, as part of the public street, nothing more was essential than to show that it was in actual possession of the city, and open to, and used by

the public as a thoroughfare at the time. This, plaintiff did. It was not necessary to prove a formal acceptance on the part of the city. *Maus v. Springfield.* 101 Mo. 613; *Haniford v. Kansas City,* 103 Mo. 172; *Buschman v. St. Louis,* 121 Mo. 523; *Rose v. St. Charles,* 49 Mo. 509; *Price v. Breckenridge,* 92 Mo. 378; *Baker v. Brandenburg,* 99 Mo. 378; *Schenck v. Butler,* 50 Mo. App. 106; *Golden v. Clinton,* 54 Mo. App. 100; *Garnett v. Slater,* 56 Mo. App. 207; *Abbott v. Cottage City,* 143 Mass. 521; *Cook v. Harris,* 61 N. Y. 448; *Hanson v. Eastman,* 21 Minn. 509; *Kennedy v. Le Van,* 23 Minn. 513; *Sandborn v. Co.,* 16 Wis. 19; *Yates v. Judd,* 18 Wis. 118. (2) A city charged with the duty of keeping its highway in repair, and having means provided by taxation to discharge this duty, will be liable for negligence in its performance, if injury result from such negligence. It is its duty to keep its streets in a condition of reasonable safety for use, by night as well as by day. *Maus v. Springfield,* 101 Mo. 617; *Franke v. St. Louis,* 110 Mo. 521; *Haniford v. City of Kansas,* 103 Mo. 181; *Roe v. City of Kansas,* 100 Mo. 192; *Bassett v. St. Louis,* 53 Mo. 296; *Bowie v. Kansas City,* 51 Mo. 461; *Blake v. St. Louis,* 40 Mo. 571; *Schenck v. Butler,* 50 Mo. App. 108; *Golden v. Clinton,* 54 Mo. App. 109; *Garnett v. Slater,* 56 Mo. App. 211; *Ball v. Independence,* 41 Mo. App. 473. (3) All the substantial issues were presented in the instructions given, and the record shows that justice was done in the finding of the jury and the rendition of the judgment. It is a well settled doctrine in this state, when from the whole case it appears that justice has been done, though errors were committed which did not materially effect the merits, the court will not disturb the verdict. *Walter v. Catchart,* 18 Mo. 256; *Smith v. Culligan,* 74 Mo. 388; *Drain v. Railroad,* 86 Mo. 582; *Nicholson v. Golden,* 27 Mo. App. 159; *Mauerman v. Railroad,* 41 Mo. App.

358; *Fitzgerald v. Barker*, 96 Mo. 661; *McGowan v. Co.*, 109 Mo. 518.

BRACE, P. J.—This is an action for damages for personal injuries to the plaintiff from having been thrown from a buggy in Papin street in said city, which resulted in a verdict and judgment in the circuit court for the plaintiff for $5,166, from which the defendant appeals.

There is no conflict in the evidence. The facts of the case sufficiently appear by the following testimony:

August Meiners, plaintiff's husband, the driver of the buggy, testified in substance as follows: "I am a teamster and reside 4322, Papin street. I had lived at my present residence about two months before the accident, and have never lived there before. On the evening of January 15, my sister-in-law, Mathilda Hollein, came up to my house to visit and spend Sunday. She was to go home on the Oak Hill train, which leaves Vandeventer station at 6:30. I started to take her down in the buggy, because my wife wanted to go out riding in the evening, and I hitched up and we drove along for about five minutes and then we collided with the stump about two blocks from Sarah street, and upset the buggy sufficiently to throw us out. The ground was frozen hard at the time and it was very dark. There was a stump in the middle of the road, with roadways on either side of the stump and running close to it. The beaten roadway was within six inches of the stump, and it was so dark at the time we could not see the stump. The roadways on either side of the stump ran within six inches of the stump. The accident happened opposite Mr. Pope's house, and we were carried in there until the physician arrived. Mrs. Meiner had her left ankle broken in two places. I visited the scene of the accident the next morning. The roadways

appeared to be much traveled over, the most being apparently on the north side, and it was on the north side I drove. The wheels of the right hand side of the buggy ran upon the stump and threw us out on the north side. It was a dirt street, not macadamized, and has never been graded. Mrs. Meiners was confined to her bed six weeks. It was a thickly settled street." Witness then indicated on plat the location of the accident.

Cross-examined, witness said:

"I had never driven over that street before, but I knew it was ungraded, unpaved and not macadamized. It runs east and west. I was going eastward. I was on the north or left-hand roadway. I had one horse, and was traveling at a regular, ordinary trot. It was a two-seated vehicle. All three of us were seated on the one seat. The street was perfectly dark.

"Q. Did you guide the horse yourself, or did you let the horse take the way? A. Well, I had been driving the horse, and I had the regular stop rein on the horse, the way I always drive.

"Q. That is not answering my question. Did you guide the horse with the reins with reference to this roadway, or did you let the horse take the way? A. I held a steady rein on the horse when I was in the roadway.

"Q. Did you allow the horse to take his own way? A. Well, yes, certainly, I did allow the horse to go because I couldn't see.

"Q. You were trusting to the vision and sight of the horse? A. No, sir; not to the sight of the horse. I was careful as I could be.

"Q. I know; but you were trusting to the horse? You answered that question before, Mr. Meiners. A. Trusting to the horse, certainly, yes, sir.

"*Q.* And you couldn't see, yourself? *A.* No, sir; I couldn't see.

"*Q.* Was that a city bred horse, or a country bred horse? *A.* A city bred horse, been here for a good many years."

The plaintiff and Mrs. Hollein gave substantially the same account of the circumstances attending the injury—the plaintiff testifying in addition as follows: "My leg was broken in two places, at the ankle and between the ankle and the knee. I was in bed six weeks and had it in plaster of Paris. I can't walk yet without some support, and I am in pain every step I take. In the morning it takes an hour before I get it so I can stand on it. It is still swollen and crooked. (At the request of her counsel witness here exhibited her leg to the jury.) It is sore and tender, and hurts me every step I take. I was never over that street before. The ground was frozen hard, because my face was cut, my eye blacked, and my teeth knocked away up in my head. They are loose yet when I chew on them, and my jawbone was hurt, and I was bruised all over. Dr. Phil. Schultz was my physician." She further testified that her age was twenty-five years.

Dr. Philip Schultz testified: "I am a physician, and attended plaintiff's injuries. She had a fracture of the outer bone in the lower leg, also a fracture of the tibia. There were also abrasions of the skin and bruises of the tissue. I treated the injuries with bandages and antiseptics. She suffered great pain. I visited her for seven weeks; after that she came to my office. Her injuries are permanent. She will always have an impediment in walking. Her foot will always turn out." Witness here illustrated with plaintiff's foot his theory that plaintiff was permanently injured, and gave his reasons why, and said her condition would not improve any. On cross-examination witness said

plaintiff's condition might improve, but he didn't think it would.

It further appears from the evidence, that the residence of the plaintiff on Papin street, from which she was being driven eastwardly along it, toward Bartle or Sarah avenue, east of which is the Old Manchester road, was near the intersection of Papin street and Newstead avenue; that in so driving they first passed over that part of Papin street which was formerly dedicated to public use as Stewart avenue, in the laying out of Dean's Addition to McRee City (when the dedication took place does not appear from the evidence); thence for about six hundred feet on that part of said street condemned for public use over the land of Mary Munchow lying between the east line of said Dean's Addition and the west line of Lucas' subdivision in the Cul de Sac fields, in pursuance of an ordinance of the city passed June 30, 1890, "Entitled an ordinance to establish and open Papin street from the west line of Lucas' subdivision in the Cul de Sac fields to the east line of Dean's Addition to McRee City." They then entered upon and were passing over that part of Papin street in Lucas' subdivision, in the Cul de Sac fields when the injury occurred.

This part of the street, where the injury occurred, was dedicated to public use also by the name of Stewart avenue on the fourth of May, 1876 by commissioners appointed under a decree of the circuit court in a partition suit of the estate of James H. Lucas deceased, as appears from the plat thereof duly filed and recorded.

By an ordinance of the city approved June 14, 1889, the grade of Papin street from the Old Mancheser road across Bartle or Sarah avenue to Newstead avenue was established, and at the time of the injury the whole street between these avenues was an open

and much traveled thoroughfare of the city, that part in Lucas subdivision aforesaid where the injury occurred, and the part in Dean's Addition, having been so open and traveled for many years prior thereto, and the part over the Munchow tract condemned in January, 1891, having been so opened and traveled ever since about that date. The street was also thickly settled and built up on both sides of the street east and west of the part condemned and opened in January, 1891, and had been so built up for six or seven years prior to the injury. But there was no evidence that the city had ever done any work on the street.

The stump with which the buggy collided was about two feet in diameter and stood about eighteen inches above the surface of the ground in about the middle of the main traveled way, and had been so standing for about two years before the injury.

This was the substance of the evidence, upon the close of which the defendant asked an instruction for a nonsuit, which the court refused, which refusal is complained of as error. The case was then submitted to the jury upon instructions, of which the following given for the plaintiff is complained of as erroneous.

"The court instructs the jury that if they believe from the evidence that Papin street, from the Old Manchester road westward for several blocks and at the place where the injury complained of occurred, has been, and was a public street in the city of St. Louis, belonging to said city as a public street for more than two years prior to January 15, 1893, and that during all said time it had been, and was, much used by the public for travel in vehicles, and that it was a public necessity that said Papin street should be in a reasonably safe condition for such travel; and if the jury further believe from the evidence, that in the evening of January 15, 1893, after dark, plaintiff was riding in

a buggy over said part of Papin street; and if the jury further believe, from the evidence, that during all said two years a stump had been standing in or near the main traveled part of said Papin street, and that the buggy in which plaintiff was riding collided with said stump and was nearly upset, and thereby plaintiff was thrown out of said buggy upon the ground, and in consequence her fibula at the junction of the middle with the lower third was fractured, and the internal melleolus fractured, and she had contusion and abrasion of the soft tissues of the left limb, and her ankle was seriously sprained, and on account of said injuries she has suffered great pain of body and anguish of mind; and if the jury further believe, that said stump, standing as it did was dangerous, and was liable to occasion injury to persons in the ordinary and usual use of said street; and that said stump had stood in said condition a sufficient length of time, before the injuries in question, to enable the officers of the defendant, by the exercise of ordinary care, to have discovered its condition, and to have removed the same, and that it was carelessness and negligence of the part of the officers of said defendant not to have discovered said stump, and its condition, and to have removed the same before the happening of the injuries in question; and if the jury further believe that the immediate cause of plaintiff's injuries resulted from said stump being left in said street; and the jury further believe from the evidence that at the time of the injury in question the plaintiff and the person driving the buggy exercised ordinary care and attention in driving over said Papin street, then you should find for the plaintiff.''

The defendant also assigns for error the refusal of the court to give the following instructions asked for by the defendant:

"1. If the jury believe and find from the evidence that the injuries sustained by plaintiff were caused by accident, mischance or misadventure, and without the negligence of either the plaintiff or the defendant, the plaintiff is not entitled to recover, and their verdict must be for the defendant.

"2. The court instructs the jury that the passage of an ordinance by the city fixing the grade of a street does not cast an obligation on the city to keep a street in a safe condition for travel, but before the city can be held responsible it must do some act changing the natural grade of the street to the grade established by such ordinance.

"3. If the jury believe from the evidence that plaintiff or the person who was driving the vehicle in which she was riding had not lately been along Papin street at the point where the accident occurred, and she or such driver was not acquainted with the condition of the street, and that it was about 6 o'clock in the afternoon of January 15, 1893, when the accident occurred, then it was the duty of plaintiff or the driver to exercise increased care in passing along the street, to avoid accident, and if she or the driver failed so to do, or failed to use such care as a person of ordinary prudence would have used under the same circumstances, then their verdict must be for the defendant."

The defendant further complains that the damages are excessive. The errors assigned will be disposed of in the order stated.

I. It is contended that there is no evidence to support the verdict, because there is no evidence that the city ever accepted the dedication of that part of Papin street where the accident occurred, and until the city did some act showing an intention to accept the same it was not a public highway, the proper care of which was devolved upon the municipality. It may be

conceded that the dedication of a way to public use by the owner of the soil, and the public use of it, does not *per se* make it a *public* highway, and devolve upon the municipality the duty of keeping such way in a reasonably safe condition for such use, without some proof of acceptance by the corporation. A way in a city may, however, become a public street or highway by a dedication by the owner in the manner prescribed by the statute, *or* by *prescription*, and in such case it is not necessary to make any proof of acceptance. *Brown v. City of Carthage*, 128 Mo. 10; *Buschmann v. St. Louis*, 121 Mo. 523; *Bauman v. Boeckeler*, 119 Mo. 189.

A way in a city may also become a public street or highway, and the city charged with the same duty by a common law dedication (by deeds or acts *in pais* of the owner), but in order for such a dedication to have that effect there must be some proof of an acceptance by the municipality. No formal acceptance by the corporate officials, however, is necessary. And such acceptance is sufficiently indicated in many cases by showing that the way as dedicated was thereafter opened, accepted, and continuously used by the public as a common public thoroughfare. *Rose v. City of St. Charles*, 49 Mo. 509; *Baker v. Vanderburg*, 99 Mo. 378; *Maus v. City of Springfield*, 101 Mo. 613; *Garnett v. City of Slater*, 56 Mo. App. 207.

The proof of such acceptance becomes more satisfactory when the way has been used as a public street, has been occupied and built up to as only public streets are used and builded to, *for many years*, and has become a well known, generally recognized, and much traveled thoroughfare as was the one in question in this case, as to which the fact of acceptance may be said to have been established beyond question by the further proof that the street as thus dedicated, opened and used was expressly recognized and adopted by the

corporate authorities, by ordinances fixing its grade, and extending it as dedicated, by condemnation over other lands.

Papin street, then, being a public street of the city of St. Louis, open and in condition for public use, and being so used at the point were the injury occurred, it became the duty of the city to keep the same in reasonably safe condition for legitimate travel thereon by night and by day (*Haniford v. Kansas City*, 103 Mo. 172; *Maus v. City of Springfield*, 101 Mo. 613; *Walker v. Kansas City*, 99 Mo. 652), and the court committed no error in refusing a nonsuit on the ground that the street where the injury occurred was not a public street and the city not charged with that duty.

2. The question of the contributory negligence of the driver (plaintiff's husband) was submitted to the jury probably on the theory that said negligence, if any, might be imputed to the plaintiff. But it is not necessary to rule upon the question, whether it could be so imputed in this case, as upon the face of the evidence it is apparent that the most the defendant could have asked, was to have the question of his and plaintiff's contributory negligence submitted to the jury. It was so done and the jury found that neither had been guilty of contributory negligence—a finding that might well have been made on the evidence. The court committed no error in refusing the nonsuit.

3. From what has been said it appears that there was abundant evidence to prove that the street in which the injury was received was a public highway of the city, which the city was charged with the duty of keeping in a reasonably safe condition for public travel. Consequently there was abundant evidence upon which to base the first instruction given for the plaintiff. The defendant was in no way prejudiced by the fact that

the jury were by this instruction required not only to find that Papin street at the place where the injury was received was a public street of the city, but to further find that it had been so used more than two years before the injury, *and* that it should be in a reasonably safe condition; and it is not true that the jury were thereby instructed that it was a public street of the city, *if* it had been so used, for that length of time *or* said condition was a public necessity, nor that it was such a street if such use and condition were both combined. We find no reversable error in the giving of this instruction.

4. In regard to defendant's refused instructions it is only necessary to say that the case was fully and favorably submitted to the jury for the defendant upon other instructions, in which everything in these refused instructions to which the defendant was legitimately entitled, was given; that the first refused instruction is a mere abstraction, which might perhaps have found some place in an argument, but had none as an instruction in this case; that upon no principle or authority known to us can the proposition contained in the second be sustained, *i. e.* that a city is not responsible for the condition of its open, traveled streets until it has changed the natural grade of the street to the grade established by its ordinances; and that the third was modified and given substantially in another instruction given by the court on its own motion, in unobjectionable form.

We find no reversible error in the action of the court in refusing these instructions, nor do we find anything in the record that would warrant us in setting aside the verdict on the ground that the damages are excessive. The judgment is AFFIRMED. All concur.