## ST. LOUIS AND THE KANSAS CITY

# COURTS OF APPEALS

AT THE

## MARCH TERM, 1908.

*(Continued from Volume 132)*

E. J. ATKINSON, Respondent, v. CITY OF NEVADA, Appellant.

**Kansas City Court of Appeals, October 15, 1908.**

**MUNICIPAL CORPORATIONS: Streets: Dedication: Acceptance: Liability.** The mere dedication of streets will not make the municipality liable for their condition for travel, even though used by the public, until they have been accepted and the city by some affirmative act has indicated their acceptance so as to imply an invitation to the public to use the streets as a way prepared for safe travel.

Appeal from Vernon Circuit Court.—*Hon. B. G. Thurman,* Judge.

REVERSED.

*A. J. King* for appellant.

The approval by the council of a plat of a proposed addition to a city, is in no sense an acceptance of a street thereon as a public highway, nor does it cast upon the city the duty of keeping such street in repair. Not until the properly authorized city officers do some act evidencing an intention to assume

133 App.—1          ( 1 )

jurisdiction over the street does the obligation of the city to keep it in repair begin, and not until then is the city liable for a failure to do so. Mere user by the public will not establish a street, nor impose on the city a duty to keep it in repair or free from barbed wire fences adjacent to it. A city is not liable for what it does in its governmental capacity: Downend v. Kansas City, 156 Mo. 60; Ely v. St. Louis, 181 Mo. 723; Moore v. Cape Girardeau, 103 Mo. 470; Ruppenthal v. St. Louis, 190 Mo. 213.

*Lee B. Ewing* and *J. R. Moss* for respondent.

We submit that the opinion of Judge Thurman is sound, that it covers all the questions raised by defendant city and is decisive of them. None of the cases, cited by defendant militate against the view taken by him, but, on the contrary, sustain that view. We know of no better way to argue this matter than to submit to this court the able review of the law and facts as made by the trial judge. We ask that judgment be affirmed.

JOHNSON, J.—This is an action against a city of the third class to recover damages for injuries to a horse owned by plaintiff, which were caused by the driving of the horse into a barbed wire fence, at the side of a public street. The injury occurred in the night of December 9, 1906, in Nevada, Missouri, at a point on Hunter street (which runs east and west) about midway between Tower and Perkins streets, parallel streets crossing Hunter street at a right angle. Owing to the darkness, the driver of the horse, who was unacquainted with the locality, did not become aware of the fact that the horse had left the traveled road until the animal became entangled in the barbed wire fence along the south side of Hunter street. The negligence alleged in the petition is "that the injuries to

said animal and the damages arising therefrom were caused by the negligence of defendant in failing to light Hunter street and in permitting the erection and maintenance of the barbed wire fence as aforesaid." The answer traversed the allegations of the petition and pleaded affirmative defenses, the nature of which we find it unnecessary to state in the view we entertain of the law of the case. The cause was submitted to the jury, verdict and judgment were for plaintiff, and defendant appealed.

The place of the injury was in Prewitt's addition to the city of Nevada. This addition was in the corporate limits of the city and had been regularly platted some years before. The streets and alleys shown on the plat, among them Hunter street, had been used as thoroughfares by the public, but no work of any kind had been done on them by the city. The locality was in a sparsely settled part of the city and, until eight or nine months before the injury, the land on both sides of Hunter street, between Tower and Perkins streets, was vacant and unfenced. At the time last stated, the owner of the block south of Hunter street enclosed it with a fence for use as a pasture. The fence with which the horse came in contact was the north boundary of this enclosure, and was about the south line of the street as platted. In 1899, the city, by ordinance, established the grade of various streets, including Hunter. This was the only act of the city which evidenced an intention to accept jurisdiction over the streets and alleys in Prewitt's addition. Defendant argues that the court should have peremptorily directed the jury to return a verdict in its favor on the ground that the city had not become bound to keep the street in proper condition for travel.

The rule is well settled "that the dedication of a way to public use by the owner of the soil, and the public use of it, does not *per se* make it a *public* high-

way, and devolve upon the municipality the duty of keeping such way in a reasonably safe condition for such use, without some proof of acceptance by the corporation." [Meiners v. City, 130 Mo. 274.] It was said by the Supreme Court in Downend v. Kansas City, 156 Mo. 1. c. 68: "A statutory dedication vests the fee to the street in the city, but until the properly authorized city officers do some act evidencing an intention to assume jurisdiction over the same, the obligation of the city to keep it in repair does not begin and, consequently, it is not liable for a failure to do so. And the mere approval of the plat is not such an act of jurisdiction." And in reviewing the Downend case, we observed in Foster v. Kansas City, 114 Mo. App. 1. c. 730: "It was further held that user by the public was not an act of the municipality and, therefore, not of itself binding upon the city; and the basic principle underlying that decision is that it requires a voluntary, not a compulsory nor perfunctory act of the city to bind it as an acceptor of the street."

The application of these rules to the facts of the present case requires us to hold that neither the dedication of Hunter street to public use by the owner of the addition platted, nor the use of the street by the public as a thoroughfare, had the effect of imposing on the city the duty of keeping the street in safe condition for travel.

In Meiners v. City, supra, the Supreme Court expressed the view that a municipality would charge itself with the burden of maintaining a dedicated street in proper condition by acts which evidenced an acceptance of the street for public use. We quote further from the opinion: "No formal acceptance by the corporate officials, however, is necessary. And such acceptance is sufficiently indicated in many cases by showing that the way as dedicated was thereafter opened, accepted, and continuously used by the public as a com-

mon public thoroughfare. . . . The proof of such acceptance becomes more satisfactory when the way has been used as a public street, has been occupied and built up to as only public streets are used and builded to, *for many years,* and has become a well-known, generally recognized, and much-travelled thoroughfare, as was the one in question in this case, as to which the fact of acceptance may be said to have been established beyond question by the further proof that the street as thus dedicated, opened and used was expressly recognized and adopted by the corporate authorities, by ordinances fixing its grade, and extending it as dedicated, by condemnation over other lands."

But in Moore v. City, 103 Mo. l. c. 476; Ely v. St. Louis, 181 Mo. 723, and Ruppenthal v. St. Louis, 190 Mo. 213, it was made clear that in such cases a city does not assume liability for the safe condition of a dedicated street by acts of a purely legislative character, such as the enactment of an ordinance accepting the grant, or of one establishing the grade of the streets and alleys. There must be some further act, such as the making of some improvement of the street, from which may be implied an invitation to the public to use it. Without such invitation, use by the public imposes no obligation on the part of the city with respect to the street. Discussing this subject, the court, speaking through Judge VALLIANT, said in Ely v. St. Louis, supra: "A municipal corporation on which is conferred the power to establish public streets and, when established, to construct them for public use, in the exercise of that power acts in two capacities, first, governmental, second, ministerial. When the municipality by ordinance declares that land embraced within certain lines is a public street, then, when the city obtains the title to or easement in that land for that purpose, either by gift or condemnation, it becomes a public street, but it is not necessarily then opened to the public

for use. And if after that the city passes an ordinance providing for the improvement of the street so as to render it fit for use, even then it is not, by the mere passing of the ordinance, opened for use. In passing those ordinances the city acts in its governmental, legislative capacity, . . ." An ordinance establishing the grade of a street is a legislative, not a ministerial act, and implies no invitation to the public to use the street as a way prepared for safe travel.

These considerations compel a reversal of the judgment in the present case. Beyond the passage of an ordinance fixing the grade, the city did nothing to show that it had assumed jurisdiction over the street, and since that act was legislative and carried no invitation to the public nor notice that the street was safe for travel; the public, in using it, did so at its own peril.

The judgment is reversed. All concur.