Ross v. Major.

## JOHN ROSS, Respondent, v. URICK MAJOR, Appellant.

### Springfield Court of Appeals, February 24, 1914.

1. **TRIAL: Weight of Evidence: Credibility of Witnesses: For Jury.** The jury is the sole judge of the weight of the evidence and the credibility of witnesses.

2. **DEMURRER TO EVIDENCE: Facts Adduced by Opponent Conceded.** In passing on a demurrer to the evidence the court must accept as proven the evidentiary facts adduced by the opponent.

3. **REAL ESTATE BROKERS: Commissions: Proof Necessary for Recovery.** To entitle a real estate broker to a commission he must be the efficient cause in finding a purchaser and the burden is upon him to show not only that he opened negotiations with the purchaser but that the sale was actually effected through his means and not by the intervention of new parties or upon different terms.

4. **REAL ESTATE BROKERS: Commissions: Evidence Reviewed.** In an action by a real estate broker for commission, evidence reviewed and deemed sufficient to justify submitting to the jury the question whether plaintiff was the procuring cause of the sale.

5. **REAL ESTATE BROKERS: Commissions: Instructions: Synonomous Expressions.** In an action by a real estate broker for commission an instruction which required the plaintiff to have "secured" a purchaser for the land, was not erroneous for failure to require plaintiff to have been "the procuring cause," since "to secure" is synonomous with "to obtain," "to get," "to procure."

6. **REAL ESTATE BROKERS: Commissions: Procuring Cause: Principal Completing Deal.** A real estate broker is not barred from his commission, where he is the procuring cause of the sale, because the principal conducted and completed the negotiations.

7. **REAL ESTATE BROKERS: Commission: Oral Contract: Evidence.** In an action by a real estate broker for a commission, where the contract of employment was an oral one, evidence that defendant told plaintiff that "he would help advertise the farm and if any one came looking for plaintiff to bring him to the farm and he would get his commission just the same," *held* admissible to show scope of plaintiff's agency and agreement of parties.

8. **REAL ESTATE BROKERS: Commissions: Advertisement: Evidence.** Where a real estate broker was employed in July, 1912, and the sale was not effected until March, 1913, and defendant contended that his own advertisements and efforts procured the purchaser and not those of the plaintiff, plaintiff was properly allowed to introduce advertisements he had made of the farm and letters responding to same to show that he had not abandoned his contract and had been diligent in his efforts to procure a purchaser.

Appeal from Crawford County Circuit Court—*Hon. R. A. Breuer,* Special Judge.

AFFIRMED.

. *Harry Clymer,* for appellant.

(1) In order to recover in this action plaintiff must show his acts were the procuring and inducing cause of the sale. Ramsey v. West, 31 Mo. App. 676; Vandyke Co. v. Walker, 49 Mo. App. 381; Pollard v. Banks, 67 Mo. App. 187; Crawley v. Summerville, 70 Mo. App. 376; Campbell v. Vanstone, 73 Mo. App. 84; Bassford v. West, 124 Mo. App. 248; Mead v. Arnold, 131 Mo. App. 222; Russell v. Poor, 133 Mo. App. 723; Real Estate Co. v. Real Estate Co., 144 Mo. App. 620; Grain v. Miles, 154 Mo. App. 348; Duncan v. Hills, 155 Mo. App. 708; Dillard v. Fields, 168 Mo. App. 206. (2) The expression procuring and inducing cause

means the cause originating a series of events which result in a sale. Park v. Culver, 154 S. W. 806; Bingham v. Linville, 156 S. W. 713; Words & Phrases p. 5654. (3) Plaintiff's instructions one and two are not correct statements of the law. The vital point at issue in this case was not submitted to he jury in those instructions, as the jury was not required to find that plaintiff was the procuring or inducing cause of the sale before he could find the issues for the plaintiff. Russell v. Poor, 133 Mo. App. 728; Sublette v. Lowe, 152 Mo. App. 186.

*F. H. Farris* and *A. H. Harrison,* for respondent.

(1) A broker is entitled to recover when he finds a purchaser and puts him in contact with the owner of the property and by reason of such contract a sale is made upon terms agreeable to the seller. The word get would mean the same and would be more readily understood by the ordinary juror that the words procuring cause. Park v. Culver, 154 S. W. 806; Bingham v. Linville, 156 S. W. 713; Hurt v. Jones, 105 Mo. App. 110; Russell v. Poor, 133 Mo. App. 729. (2) Instructions one and two are not only supported by the citations of appellant, but there are numerous authorities in which instructions couched in different language but meaning the same have been upheld even when the words procuring and inducing cause were omitted therefrom. Wetzell v. Wagoner, 41 Mo. App. 514; Larow v. Bozarth, 68 Mo. App. 409; Crone v. Trust Co., 85 Mo. App. 604; Gelett v. Ridge, 117 Mo. 558. (3) Instruction No. 2 is also supported by the following authorities: Sallee v. McMurray, 113 Mo. App. 264; Simmons v. Oneth, 140 Mo. App. 272; Corum v. Arnold, 156 Mo. App. 551; Real Estate Co. v. Epstein, 157 Mo. App. 106.

FARRINGTON, J.—A real estate broker in the trial court recovered a five per cent. commission on an

alleged sale of appellant's forty-acre farm near Bourbon, Mo. His petition averred that, acting under a verbal contract entered into in July, 1912, he advertised said property for sale and in March, 1913, secured and produced a purchaser who was ready, able and willing to purchase said farm for the sum of $2350 which was the price defendant the owner, demanded, and that said purchaser so produced did in fact purchase at said price, but that upon demand defendant refused to pay plaintiff his commission.

The vital question in this case is as to whether the broker earned the commission. It is not claimed that he had the exclusive right to sell defendant's farm.

Plaintiff at the trial offered numerous exhibits in the form of advertisements of this farm and letters of inquiry in response thereto, so that there is no doubt he was diligent in his search for a customer. The farm was finally sold to a man named Schimanoski in March, 1913, and plaintiff's position is that he was wrongfully ignored in the transaction. Plaintiff's exhibit O is as follows:

"St. Louis, 16, 1913.

"Dear Sir: In reply to your ad in the Sunday Post that you have eighty acres of land for sale how far is it from St. Louis and is there stock on it or a house. Let me know at once as I am looking to buy a place and how to get there by what train. Let me hear from you at once, my address is Mr. Joe Schimanoski, 3545 South Jefferson, St. Louis."

Plaintiff testified that he received this card on February 19, 1913, and that it was a response to an advertisement of an eighty-acre farm; that he answered it the same day; that this was the first communication he ever received from Schimanoski according to his recollection and that he did not know Schimanoski. Plaintiff testified that he met the man who wrote that card at the railroad station at Bourbon in this manner:

''When he got off the train I noticed he was a stranger and I waited a few minutes and he came up to me and he had a newspaper in his hand all marked and cross-marked and he said, 'Are you the man that sells farms?' and I told him yes, and he asked me about these farms that he had all marked and I said that I could take him out and would go out and get a buggy and take him out and let him see the farms that he had marked and then he asked about another place that belonged to Wedimire, one of his ads was at the top of the page he had and he said it was one hundred acres and he would like to see that one and I told him that was a pretty rough road there that we had better look at the others first and so then he came along with me and we went to the livery barn and he asked how far it was to the first farm I was going to look at and I told him about a mile and he said, 'If it was a mile let us walk' and he said 'if I don't like that farm we will come back and take a rig and go around until we find something I want to buy,' and we walked out to Mr. Major's farm. We went out there and I introduced him to Mr. Major and we went down through the farm and went around past the barn and examined the barns and went down into the woods and went down nearly to the line of the land until we come to the west side of the farm and went along that fence and through a valley and come to the edge of the Springfield road and come up through some of the plowed land back to his pasture by the side of his house and we went in the house after that. He said he liked the farm and he would bring his wife out to see it and she was sick then and in three or four days, before he would decide, but he talked favorable about the farm. As we were leaving the house, after we got up from dinner to come away he asked Mr. Major if he wouldn't take anything less for the farm than $2500 which he had stated was the price, and then Mr. Major said, 'If you will pay all cash I will make a slight reduction for cash, but we will talk

about that when you get ready to buy it; when you bring the money if you will pay all cash I will make a discount.'" Plaintiff testified that he went to the depot with Schimanoski and waited there with him for the train probably an hour and a half as it was an hour late, and that Schimanoski then went to Sullivan, Mo. Plaintiff testified that the next time he saw Schimanoski was through a train window on March 18, 1913, at which time plaintiff had just boarded a train at Bourbon which came from St. Louis, and after he was on the train he saw Schimanoski standing on the station platform. The next time he saw Schimanoski was when the latter moved his household goods to the Major farm. Plaintiff testified that on March 20th or 21st he saw the defendant and told him the commission was due, but that defendant evaded the question by saying the farm hadn't been sold yet. On cross-examination he was asked: "Did you have an advertisement of the Major farm in the Post-Dispatch of February 9, 1913?" He answered: "I had an advertisement I think in one of those exhibits that included his farm with forty acres adjoining it." He testified that he expected Schimanoski to come to Bourbon and had been looking for him for ten days before he came, watching every train, because in his card he had asked how to get to Bourbon and what train to take, and that although Schimanoski did not answer his communication, he nevertheless expected him to come because "they generally come when they ask how to come." He was asked whether Major told Schimanoski what he wanted for the farm, and answered: "I told him that Mr. Major confirmed the price. Q. Didn't Mr. Major tell him then and there what he wanted for the farm? A. Yes, sir; he said $2500." Upon being asked whether he did anything else toward selling the farm than walking out there with Schimanoski and walking over the farm with him and walking back to the train with him, he answered that he had also advised

Schimanoski not to buy land at Sullivan; that land at Sullivan was so much higher, and that Mr. Major's deal was a better proposition. Plaintiff called one witness, a merchant of Bourbon, who testified concerning a conversation he claimed to have had with Major on March 6 or 7, 1913, in which the latter detailed the occurrences of the visit of plaintiff and Schimanoski to his farm, and then said: "They hadn't more than left, until I thought I would fix that fellow and I went in and set down and wrote this man that Ross had out there a letter so he would get it the next morning there in St. Louis, and I told him if he would deal direct with me instead of Ross that he could buy that farm cheaper, and that I would let him have the farm less the commission cheaper than he could buy it from Ross, but not to let Ross know anything about it." And that Major then said: "Ross thinks he is pretty damn smooth but I showed him now that he ain't quite so smart." Plaintiff then showed that a deed passed from Major to Schimanoski dated March 19, 1913, and rested his case. The court overruled defendant's demurrer to the evidence.

Defendant called Schimanoski who testified at length, and then took the stand in his own behalf. Schimanoski gave an entirely different account of his meeting with Ross at Bourbon on the first visit, saying that Ross came to him on the station platform and asked him if he was looking for land, and upon being told, offered to show Schimanoski an eighty-acre tract, but that witness told him he had a letter from Mr. Major and wanted to see that place and that Ross said he would go along. Every portion of plaintiff's evidence which favored his interests is denied by Schimanoski and Major and a different version given. Indeed, their testimony was of a character to amply support a verdict for the defendant had the jury so found.

Respondent filed an additional abstract. It is a mere reproduction except in one particular. The cross-

examination of Schimanoski is set out in full, and we find the following questions and answers. "Q. Didn't he (meaning Major) tell you that he would sell the farm less to you without dealing through the real estate agent? A. Yes, sir: when he— Q. He told you that, didn't he? A. Yes, sir. Q. When was that? A. I don't know; I think later on he said he got the farm to sell himself. Q. When was that he told you that? A. That was something I can't remember. Q. Did you have such a talk? You had a talk of that kind? A. He didn't say; he got the farm in his own hands for sale. Q. And if you dealt direct with him he would sell it to you cheaper and give you the benefit of the agent's commission, didn't he? A. He didn't say that. Q. What did he say then? A. He said I should deal direct with him; that is all; because he has got a farm in his own hands. Q. And he told you that when you came down the second time? A. The second time."

Defendant at the close of all the evidence requested and the court refused to give a peremptory instruction in the nature of a demurrer to the evidence.

Appellant insists that the trial court committed reversible error in submitting the case to the jury.

The demurrer admitted as true everything plaintiff's evidence tended to prove, and we think that his evidence is sufficient to support the verdict. It is true, the defendant's evidence denies very substantial portion of plaintiff's evidence, and the transaction is put in an entirely different light—in a manner calculated to convince a jury that Major had advertised the farm, found the customer, fixed the terms and consummated the deal, and that it was a mere coincidence that the customer saw plaintiff's advertisement of an eighty-acre tract and wrote about it and fell in with him at Bourbon and allowed him to accompany him (the customer) to the Major farm. But the weight of the evidence and the credibility of the witnesses was with the

jury. It is a case that might have been won before the jury, but cannot be won in the appellate court on the contention that the verdict is unsupported by any substantial evidence. It was not essential to plaintiff's recovery that Schimanoski must have seen an advertisement by plaintiff *of the Major farm.* He admitted that he saw advertisements by plaintiff and thereby knew plaintiff was a real estate agent at Bourbon before he wrote the card of inquiry on February 16, 1913. It was sufficient if plaintiff caused him to come and introduced him to the defendant and was the producing cause of the negotiations, and there is enough evidence to this effect to amply justify the trial court in submitting the case to the jury. It is uncontroverted that plaintiff and the customer who subsequently purchased defendant's farm went to the farm and walked over it, and that when the customer left plaintiff went with him, and that although plaintiff and the customer and defendant were together at the farm on this occasion for several hours "talking trade," at no time during the negotiations did defendant claim Schimanoski as his customer, nor did defendant ever notify plaintiff that he did not consider Schimanoski plaintiff's customer. This reticence on the part of the defendant, at a time when common sense and ordinary business prudence demanded that he speak, was probably considered by the jury in reaching its conclusion that Schimanoski was plaintiff's customer.

The appellant persistently looks at the case from the viewpoint of his own evidence, ignoring the rule that requires a court in ruling on a demurrer to the evidence to accept as proved the evidentiary facts adduced by his opponent.

This case is not like those where there is no substantial conflict in the evidence and where the court finds undisputed evidence which shows that the broker was not the procuring or inducing cause of the sale— one of the standards laid down by which to measure lia-

bility in this class of actions. [Ramsey v. West, 31 Mo. App. l. c. 687; Gerhart Real Estate Co. v. Real Estate Co., 144 Mo. App. l. c. 625, 129 S. W. 419.]

In the case of Crain v. Miles, 154 Mo. App. l. c. 348, 134 S. W. 52, this court said: "The law is well established in this State that to entitle a real estate broker to his commission he must be the efficient cause in finding a purchaser; that it is not sufficient that the act of the broker was one of a chain of causes bringing about the sale, but in order for the broker to recover for his services, his act or acts must have been the procuring or inducing cause, and the burden is upon him to show, not only that he opened negotiations with the purchaser but that the sale was actually effected through his means and not by the intervention of new parties or upon different terms."

The trial court, at defendant's request, gave two instructions, in one of which the jury was required to find as a condition precedent to rendering a verdict for plaintiff that plaintiff was the procuring and inducing cause of the sale, and in the other that plaintiff was the efficient, inducing and procuring cause of the sale. Appellant contends that "procuring cause," used in this sense, means "the original discoverer of the purchaser." We think there was evidence introduced by the plaintiff from which the jury could reasonably infer that plaintiff was the original discoverer of the purchaser. To do so, they must have disregarded evidence offered by the defendant to the effect that defendant's advertisement brought the customer to Bourbon for the express purpose of looking at defendant's farm—but it is the right of the jury to disbelieve witnesses. They evidently believed from plaintiff's evidence that he was the procuring cause of the sale, and that was distinctly a jury question. [Cole v. Crump, (Mo. App.) 156 S. W. 769.]

Appellant complains of plaintiff's instructions on the ground that the vital point at issue was not sub-

mitted to the jury in those instructions—that the jury was not required to find that plaintiff was the procuring and inducing cause of the sale before it could find the issues for the plaintiff.

The instructions complained of are as follows:

"1. The court instructs the jury that if they believe and find from the evidence that the defendant gave the plaintiff his forty-acre farm near Bourbon, Mo., together with certain personal property, for sale as his agent, and agreed with the plaintiff that if he should secure a purchaser therefor, and a sale thereof was made to such purchaser, that he would pay the plaintiff the sum of five per cent. commission on the purchase price received therefor; and if you further find and believe from the evidence that the plaintiff did secure a purchaser for said property, and that said purchaser bought the same, you will find the issues for the plaintiff and assess his damages at the sum of five per cent. upon the amount of the purchase price, received by defendant, not to exceed the sum of $117.50."

"2. The court instructs the jury that if you believe and find from the evidence that the plaintiff Ross, under a contract, as set out in instruction No. 1, with the defendant, did secure a purchaser for the farm and personal property of the defendant, and that the purchaser did buy the same, the plaintiff will be entitled to recover his commission, even though the actual terms of the sale were negotiated between the defendant and the purchaser and the trade finally consummated between the defendant and the purchaser without the knowledge or assistance of the plaintiff."

Appellant cites Russell v. Poor, 133 Mo. App. l. c. 728, 119 S. W. 433, wherein the court used this language in condemning the broker's instruction: "The main ground of the objection is that the instruction failed to submit to the jury as one of fact, the question of whether the efforts of plaintiff were the procuring

cause of the sale. The pleadings and evidence make that question of vital importance, and the instructions of plaintiff should have included it in their hypothesis. All of the facts submitted in the instruction quoted might be resolved in favor of the contention of plaintiff and still it might be true that his efforts as the agent of defendant were not the procuring cause of the sale.'' Having quoted this passage from the Russell case, appellant concludes that plaintiff's instruction in the case at bar is likewise erroneous, and that the error was not cured by the instructions given at his request, because, as is said in the last paragraph of the opinion in the Russell case, ''The rule is well settled that proper instructions given at the request of the party afterward defeated by the jury do not remedy material error in antagonistic instructions given at the request of his successful opponent.''

There is no magic in the words ''procuring and inducing cause.'' It is only essential that the instruction in some manner incorporate this principle as one of its parts; and any words conveying clearly this idea to the jury may be used. We think plaintiff's instructions were sufficient. The word ''secure'' is used in those instructions. In the Century Dictionary, ''to obtain,'' and ''to give'' are given as synonyms of the verb ''to secure;'' while in the Standard Dictionary, ''get,'' ''obtain,'' and ''attain'' are given as its synonyms. One definition of ''to attain'' given in Webster's Dictionary is ''to procure.'' One of the meanings of ''to secure'' given in Anderson's Dictionary is ''to procure.'' [Haun v. State (Kan. App.), 54 Pac. 130, 132.] There are numerous decisions in which instructions couched in different language but meaning the same have been upheld. [Wetzell & Griffith v. Wagoner, 41 Mo. App. 514; Larow v. Bozarth, 68 Mo. App. 406; Crone v. Trust Co., 85 Mo. App. l. c. 604, 607; Gelatt v. Ridge, 117 Mo. l. c. 558, 23 S. W. 882;

Hurt v. Jones, 105 Mo. App. 1. c. 110, 79 S. W. 486; Russell v. Poor, supra, 1. c. 729.]

The plaintiff's instructions bearing on the question of the procuring and inducing cause of the sale we think sufficiently declared the law. The defendant's instructions, which were also given, merely declared the law in different words; so that no confusion could have arisen in the minds of the jurors as to what was necessary under the law in order to entitle plaintiff to a verdict.

The correctness of the principle enunciated in plaintiff's instruction No. 2, that the fact that the principal conducted and concluded the negotiations does not bar a recovery is no longer disputed. [Simmons v. Oneth, 140 Mo. App. 1. c. 272, 124 S. W. 534; Hamilton v. Davison, 168 Mo. App. 620, 153 S. W. 277.]

Plaintiff testified that at the time Major first gave him the farm for sale, Major said "he would help advertise the farm and that if any man came out for me to take charge of him and bring him out and I would get the commission just the same." This was admitted over defendant's objection that this was not the basis of the suit or the cause of action sued on. Appellant contends this was error, citing cases holding that where an action is brought on a special contract, the plaintiff can recover only on the contract pleaded, and not upon a different one. We think the testimony was properly admitted on the theory that the contract alleged was verbal and that anything said by the parties at the time it was made was competent evidence to show what they understood was the scope of the agency and what they meant. by their agreement that plaintiff was "to procure a purchaser and to sell" defendant's farm. In stating a cause of action on a verbal contract it is obviously not necessary to set forth every detail of the conversation. However, plaintiff did not proceed on the theory that he was entitled to recover by reason of this evidence. No other evidence in the case points to

such a theory and there is no instruction on it, given or refused. The plaintiff proceeded in his petition, evidence and instructions on the theory that he had advertised defendant's farm and procured a customer who subsequently purchased on terms made by the defendant.

Defendant objected to the introduction of numerous exhibits offered by plaintiff in the form of advertisements of this farm and letters in response thereto on the ground that they did not tend to prove that plaintiff was the procuring and inducing cause of the sale to Schimanoski, and requested three instructions, all of which were refused, to the effect that the jury should disregard the fact that plaintiff advertised the farm or that he wrote to persons other than Schimanoski in regard to the sale of the farm, unless they believed from the evidence that such acts directly contributed toward the sale of said farm to Schimanoski and were the procuring and inducing cause of the sale. The contract was made in July 1912 and the sale occurred in March 1913. Defendant was insisting that it was his advertisement and his efforts which procured the purchaser. We think the exhibits were clearly admissible for the purpose of showing that plaintiff had not abandoned the contract (defendant claimed he revoked plaintiff's agency) and was diligent in his efforts to procure a purchaser.

It follows from what has been said that the defendant must abide by the verdict of the two juries which have passed on his case. The judgment is affirmed. *Robertson, P. J.,* and *Sturgis, J.,* concur.