LIZZIE BRIGMAN, Respondent, v. CITY OF ST. JOSEPH, Appellant.

In the Kansas City Court of Appeals, April 30, 1923.

1. **APPEAL AND ERROR:** Demurrer: In Passing upon a Demurrer to the Evidence, All of the Evidence Should be Brought Before Appellate Court in the Abstract, So that it May Determine Whether Demurrer was Properly Overruled. In passing upon a demurrer to the evidence, all of the evidence upon which the demurrer was overruled should be presented to appellate court in appellant's abstract.

2. **MUNICIPAL CORPORATIONS:** Where Sidewalk Had Been Used for Travel for Great Many Years Without Interference fom City, it is Held City Impliedly Invited Public to Use the Same. Because a city has not improved a street in an old and well settled part, which had been used for travel for a great many years without its interference, where the surrounding streets had been improved, it cannot contend that it had not impliedly invited persons to use the sidewalk in view of the conditions present and long use of sidewalk by public.

3. ———: Negligence: Evidence Held Sufficient to Support a Finding That Sidewalk Was Defective. Where the evidence showed that the entire sidewalk on which plaintiff fell and was injured was composed of material that was old and rotten and would crumble or break when stepped upon, *held* there was sufficient evidence to support a finding of negligence on the part of the city, the fact that the particular place where plaintiff fell was not known to be defective or to have existed for any length of time prior thereto not being material.

4. **DAMAGES:** A Verdict of $4000 Awarded Plaintiff for Permanent Injury to Right Hand and Fingers, Held Not Excessive. Where plaintiff was injured by falling upon a defective sidewalk, as a result of which her right hand and fingers were permanently injured and she was unable to follow her previous occupation as dishwasher, *held* a verdict of $4000 was not excessive.

213 M. A.—37

Appeal from the Circuit Court of Buchanan County.—
*Hon. L. A. Vories,* Judge.

AFFIRMED.

*C. F. Strop* and *Chas. H. Mayer* for respondent.

*Alva F. Lindsay, Herman Hess* and *John Muster* for
appellant.

BLAND, J.—This is an action for damages for per-
sonal injuries caused by the falling of plaintiff upon a
defective sidewalk in defendant city. There was a ver-
dict in favor of plaintiff in the sum of $4000 and defend-
ant has appealed.

The facts show that plaintiff lived on Bartlett Street,
the second door south of Jackson Street. On the morn-
ing of June 6, 1921, she left her residence and proceeded
south on the east side of Bartlett Street. When she
reached a point about fifty feet north of Scott Street, the
first intersecting street south of Jackson, she stepped
upon a block of asphalt. The asphalt broke off and she
fell, breaking the two lower bones of her right arm and
"knocking" her shoulder out of place. Bartlett Street
had been dedicated and accepted as a public street by
defendant city at least thirty years prior to the date of
the trial, which was on November 11, 1921, and had been
used as a public street for at least forty-five years. There
is no controversy but that Bartlett Street was a city
street, but the main contention of the defendant is that
the city had neither expressly nor impliedly invited the
public to use the sidewalk for travel.

The facts in this connection show that the sidewalk
on the east side of Bartlett Street, between Jackson and
Scott Streets, was composed of cinders and asphalt
blocks; in one-half of the block the sidewalk was com-
posed of cinders and the other half of pieces of old as-
phalt about one inch in thickness and surfaces from one
to two square feet, one witness testifying that these

pieces of asphalt were about the size of the top of a table. The asphalt started at Scott Street and ran one-half a block north. These asphalt blocks were not placed there by the city nor was a permit secured for the laying of them nor did the city have anything to do with their placing. They were put there about sixteen years prior to the trial by persons not connected with the city government. At that time Sixth Street, the first street east and parallel to Bartlett, was being repaved some persons secured blocks of the old asphalt that was being torn up on this street and placed them on Bartlett Street for a sidewalk. These pieces of asphalt were not laid upon any foundation but merely upon the dirt which had washed out along the edges so that the blocks would "wriggle around with you when you walked on them" and occasionally when they were stepped upon they would crumble. "The dirt works loose from under them and lets them fall off;" they had been for a long time "loose and shaky;" "they were bad and rough." "They were all bumps and broke." When these blocks were stepped upon they would sometimes break off. A witness testified that he had some of them in his yard and that they often would break and crumble.

Bartlett Street between Scott and Jackson had never been graded nor paved nor the grade established nor was there any sidewalk on the opposite side of the street. There was a fire hydrant near the corner of Bartlett and Scott on the east side of the street and about ten feet north of that was a telegraph pole. At the place where plaintiff fell there was a telephone pole. There was a picket fence and a number of houses on each side of the street and a church on the east side near Jackson. Bartlett Street was used as a thoroughfare by not only the people who lived in the block but by people from all over the city. Sixth Street had been paved and repaved. There was a sidewalk on the west side of Bartlett in the block south and one in the block north of the block where plaintiff fell. Plaintiff had lived in the same place for eight months prior to the injury and

had lived in the block north for one year prior to her last moving. Several photographs were introduced in evidence tending to show the condition of the sidewalk where plaintiff fell and the surroundings, but defendant has not brought them here in its abstract. These may show that additional improvements were present. We should have before us all of the evidence in passing, upon the demurrer to the evidence. [Nash v. Brick Co., 109 Mo. App. 600.]

We think that under these circumstances the demurrer to the evidence was properly overruled. The facts show that plaintiff did not live in the vicinity at the time these blocks of asphalt were placed and their appearance to her as a traveler was such as to cause her to believe that the city had invited travel over this sidewalk. The sidewalk has been used for travel for a great many years without interference from the city. This was not a sparsely built up part of the city but was in an old part where the surrounding streets had been improved by it. The block in which plaintiff fell was well built up and had a church upon it and the sidewalk must of necessity have been used by a great many people. But the city says that because it had not improved the street by fixing the grade and grading it or building a sidewalk, it had not impliedly invited persons to use the sidewalk in question. However, in view of the conditions present and the long use of the sidewalk by the public, we think that the city impliedly invited the public to use it.

In Benton v. St. Louis, 217 Mo. 687, 704, 705, it is said—

"Professor Greenleaf says: 'It does not follow, however, that because there is a dedication of the public way by the owner of the soil, and the public use it, the town, or county, or parish, is bound to repair. To bind the corporate body to this extent, it is said that there must be some evidence of acquiescence or adoption by the corporation itself, such as having actually repaired it, or erected lights or guide-posts thereon, or having as-

signed it to the surveyor of highways for his supervision or the like.' This statement, it is noticeable, is a very careful and guarded one, and is indicative of the doubt in the mind of the writer. In another treatise (Angell, Highways, sec. 159) appears language more clearly exhibiting the uncertain state of the law. This uncertainty is removed by the later authorities,. and it may now be considered as the prevailing opinion that an acceptance may be implied from a general and long-continued use by the public as of right. The later decisions upon this subject will, when analyzed, be found to be well bedded in principle. The 'town, county, or parish,' using Professor Greenleaf's terms, is represented by the town, county or parish officers, but the officers are not the corporation. The municipal corporation consists of the inhabitants and not the officers; the officers are, in truth, nothing more than the agents of the corporation. The inhabitants, therefore, stand to the officers as principals, and if the principals have, by their conduct, accepted the dedication, it is of no great importance that the agents have taken no action in the matter. The inhabitants of a locality having by long-continued use treated the way as a public one, they make it such without the intervention of those who derive their authority from them. Creating towns, cities, and other public corporations, is 'but the investing the people of the locality with the government thereof,' and they may themselves exercise the powers of government of highways quite as effectually by continued use as by any other method. Of course, user cannot constitute a way a public one in cases where the incorporating act requires an acceptance by some officer or body expressly designated.''

Defendant cites the case of Downend v. Kansas City, 156 Mo. 60, and like cases but we need not go into an analysis of what was held in those cases for the reason that the Benton case is a later expression of the Supreme Court and is cited with approval in the case of Curran v. City of St. Joseph, 264 Mo. 656. In discuss-

ing the Downend case this court in the case of Curran v. St. Joseph, 143 Mo. App. 618, 621, 622, said:

"But recently, in the case of Benton v. St. Louis, supra, there has been much more advanced ground taken, though it is supported by other decisions, such as Meiners v. St. Louis, 130 Mo. 274. In the Benton case it is said that there need not be any act of the officers of the city, but acquiescence in the use by the public will suffice. It is said, at page 705 of the report, that "The inhabitants of a locality having by long continued use treated the way as a public one, they make it such without intervention of those (officers) who derive their authority from them." That statement is taken from Elliott on Roads and Streets (Sec. 154), and is expressly approved."

It is insisted that there is no evidence that any defect existed at the place where plaintiff fell for any length of time prior thereto. "Whether or not any particular block was defective or the one where plaintiff fell in particular is not shown in evidence. This is a different state of facts from a general condition of the sidewalk." The evidence shows that this entire sidewalk was composed of material that was old and rotten and would crumble or break when stepped upon. The asphalt block that caused plaintiff's injury was shown to be of the same character as the remainder of the sidewalk. We think there is no merit in this contention of the defendant.

It is last insisted that the verdict is excessive. As a result of plaintiff's injuries she cannot turn her right hand without aiding the wrist with the left hand and cannot move the fingers of her right hand. She was a strong, well person before the accident and was able to do and did all kinds of housework and "any honest work that she could get to do." She had for sometime been working in a restaurant washing dishes, but had been unable to do any work since her injury. Her physician testified she could do no cooking, washing, or dish washing with her right hand. He testified that she suffered

Brigman v. City of St. Joseph.

a simple fracture of the radius and ulna; that there would probably be "permanent disability of that arm as her condition is now." He said, however, that there had been a previous fracture of the arm but he could not tell whether the present disability was caused in part by the previous fracture; that when he saw her arm it had been disabled from a recent fracture; he could not say whether the arm had been permanently disabled prior to the latter fracture she had received. However, there is other evidence on the part of plaintiff to show that there was no disability in the arm prior to the time she received the latter fracture. The evidence shows that plaintiff has a disabled right hand and there is testimony from which the jury could say that this disability was permanent. Under such circumstances we cannot say that a verdict for $4000 is so large as to justify us in interfering with it.

The judgment is affirmed. All concur.